FILED
7/7/15 11:59 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 05-31587-CMB |
| DESPINA SMALIS, | Chapter 7 |
| Debtor. | |
| ERNEST SMALIS,<br>E. SMALIS PAINTING CO., INC., | |
| Plaintiff, | Related to Doc. Nos. 203 & 215 |
| v. | |
| LIBERTY MUTUAL SURETY, US BC<br>PENNSYLVANIA-WESTERN-PITTSBURGH,<br>STANLEY MAKOROFF, FORMER<br>TRUSTEE-PRINCIPA, JEFFREY J.<br>SIKIRICA, TRUSTEE-PRINCIPAL, | |
| Defendants. | |

## MEMORANDUM OPINION

The matter before the Court is the *Motion for Leave to File Civil Adversary Action Against Chapter 7 Trustees and It's* [sic] *Surety, Including Violations of Due Process* ("Motion for Leave")[1] filed by Ernest Smalis ("Mr. Smalis"), pro se, ostensibly on behalf of himself and E.

---

[1]     For clarification, the Court notes that the caption of this Memorandum Opinion reflects the parties as identified in the caption of the Motion for Leave. Said motion was filed on the docket of the bankruptcy case despite the use of the terms Plaintiff and Defendants. As clarified by Mr. Smalis at the June 9, 2015 hearing, he did not intend to name this Court as a party to his motion despite the inclusion of "US BC Pennsylvania-Western-Pittsburgh" within the caption. Also, the Motion for Leave was not filed in Adversary Proceedings 12-2140 and 14-2075, despite the reference in the caption of the Motion for Leave. In the former proceeding, Mr. Smalis recently filed a motion despite the adversary proceeding having been closed since November 19, 2012. The latter proceeding was commenced by E. Smalis painting Co., Inc., against the Debtor. Mr. Smalis was not named as a party in that proceeding and said proceeding has since been resolved and closed.

1

Smalis Painting Co., Inc. ("Painting Company").[2] Mr. Smalis subsequently clarified that he brought the motion only on his own behalf.[3] Responses to the Motion for Leave were filed by Stanley Makoroff, the former trustee ("Trustee Makoroff"), and Jeffrey Sikirica, the current trustee ("Trustee Sikirica", together the "Trustees"). In addition, Despina Smalis ("Debtor") filed a motion to dismiss ("Motion to Dismiss") in response to the Motion for Leave. Thereafter, Mr. Smalis filed a response to the Motion to Dismiss as well as "rebuttal answers" to the responses of the Trustees.[4] Upon consideration of the Motion for Leave and related filings set forth herein, the arguments presented at the hearing held on June 9, 2015 ("June 9th Hearing"), the dockets of the bankruptcy case and related adversary proceedings, and based upon this Court's familiarity with the record of this case and related proceedings, and for the reasons set forth herein, the Motion for Leave is denied. As a result, Debtor's Motion to Dismiss is deemed moot.

---

[2] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A). Further, based upon the record, this Court finds that the parties knowingly and voluntarily consented to adjudication by this Court. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015). In the event that the District Court concludes that this matter is not core and the parties did not consent to adjudication by this Court, then this Memorandum Opinion and Order entered shall constitute this Court's recommendation to the District Court.

[3] Mr. Smalis provided this clarification at the June 9, 2015 hearing. Mr. Smalis is well aware from his involvement in the bankruptcy case that he cannot represent the Painting Company. *See Am. Corporate Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 87 n.1 (3d Cir. 2011). Although Mr. Smalis retained counsel, Donald Calaiaro, Esq., for the Painting Company in Adversary Proceeding 14-2075, Attorney Calaiaro explicitly limited his representation of Painting Company to that proceeding. Notably, some of Mr. Smalis' contentions within the Motion for Leave appear to duplicate matters resolved in Adversary Proceeding 14-2075 by Memorandum Opinion and Order entered on June 12, 2015.

[4] Within his *response* to Debtor's Motion to Dismiss and his *rebuttal answers* to Trustee Sikirica's response, Mr. Smalis included what he identified as motions. Motions, however, are not to be included within responses pursuant to W.PA.LBR 9013-1(c). The Court treats the filings simply as responses for the purpose of resolving the matters before the Court. Mr. Smalis was, nonetheless, permitted great latitude in his oral argument to the Court on June 9, 2015.
   The Court also notes that on June 23, 2015, Mr. Smalis sought this Court's permission to add three additional pages to his previously submitted rebuttal answers. This Court granted the request and provided an opportunity for response to the additional submissions by Mr. Smalis. Both Trustees responded. On July 6, 2015, notwithstanding this Court's Order dated June 24, 2015, Mr. Smalis filed a rebuttal response. All of these additional submissions have been reviewed and considered by the Court.

2

Procedural History and Background

Much has occurred over the approximately ten-year period since this bankruptcy case was commenced. Over this time, the counsel involved, the appointed trustee, and the Judge assigned to the case have changed. The background of the case is particularly relevant to understanding the various allegations contained within the Motion for Leave. The facts set forth herein as background are matters of record in this case.

Debtor's bankruptcy case was commenced on September 2, 2005, by the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtor's counsel, at that time, was Steven T. Shreve, Esq. Upon filing, the case was assigned to the Honorable Bernard Markovitz. Debtor completed her petition on September 27, 2005. Therein, neither Debtor's former spouse, Mr. Smalis, nor any entity related to Mr. Smalis was identified as a creditor in Debtor's schedules.

On September 28, 2005, the Court issued the *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines*, advising, *inter alia*, of the deadline to file a complaint objecting to Debtor's discharge and to challenge the dischargeability of certain debts. The deadline was established as January 3, 2006. On October 6, 2005, the Court issued the *Notice of Need to File Proof of Claim Due to Recovery of Assets*. Therein, creditors were advised to file a proof of claim on or before January 6, 2006, if they wished to share in any distribution of funds. As Mr. Smalis was not identified as a creditor by Debtor, he did not receive these notices; however, Mr. Smalis did receive notice of the bankruptcy case very early on in the case due to the filing of an adversary proceeding by Trustee Makoroff. In Adversary Proceeding 05-3195, commenced on October 31, 2005, Trustee Makoroff sought to sell, and ultimately did sell, certain real estate co-owned by Debtor, Mr. Smalis, and others.

3

Shortly after the commencement of the first adversary proceeding by Trustee Makoroff, on November 8, 2005, a letter written to the Court by Mr. Smalis was docketed in the above-captioned case as a notice of appearance. Therein, Mr. Smalis identified himself as the former spouse of the Debtor and further indicated his intent to commence an adversary proceeding. He provided contact information to the Court as follows: Ernest Smalis FH5830, P.O. Box 1000, Houtzdale, PA 16698-1000 (hereinafter "Houtzdale Address"). Since that time, Mr. Smalis has participated extensively in the bankruptcy case and related proceedings, including by participating telephonically in at least one hearing while he was incarcerated and by commencing several adversary proceedings.[5]

On November 29, 2005, an adversary proceeding was commenced by Mr. Smalis, pro se, against a number of parties, in which he alleged that a certain mortgage had been paid in full. *See* Adversary Proceeding 05-3325. Thereafter, on January 19, 2006, Robert O. Lampl, Esq. ("Attorney Lampl") filed a *Notice of Appearance* on behalf of Mr. Smalis in that adversary proceeding and a *Request for Notices and Service of Papers* on the docket of the bankruptcy case. The adversary proceeding was resolved and closed following the entry of a Consent Order of Court dated May 19, 2006.

Ultimately, Debtor was granted a discharge by Order entered on **March 6, 2006**. Notice of Debtor's discharge was provided to Mr. Smalis at the Houtzdale Address. *See* Doc. No. 61.[6]

---

[5]  According to the Motion for Leave, Mr. Smalis was incarcerated from 1999 until 2010. *See* Motion for Leave, at 2. Nonetheless, Mr. Smalis participated actively in the bankruptcy case and related adversary proceedings. For example, on November 23, 2005, Trustee Makoroff commenced a second adversary proceeding to sell additional real estate co-owned by Debtor, Mr. Smalis, and others. *See* Adversary Proceeding 05-3308. Mr. Smalis participated in said proceeding by filing an answer on December 28, 2005, and a motion for writ of habeas corpus on January 4, 2006. Mr. Smalis also participated telephonically in the sale hearing on January 10, 2006.

[6]  Unless otherwise specified, all citations to the docket are to documents filed in Case No. 05-31587.

4

On September 25, 2006, Trustee Makoroff filed *Trustee's Final Report and Account of the Administration of the Estate and Final Application for Compensation* ("Final Report") and a proposed order for distribution. *See* Doc. Nos. 92 and 94. The *Notice of Filing of Final Account of Trustee Scheduling Hearing on Applications for Compensation, and Proposed Final Distribution Combined with Order Fixing Deadline for Filing Objections Thereto* is docketed showing service to the Houtzdale Address. *See* Doc. No. 101.[7] No timely objections were filed and an Order was entered on November 2, 2006 ("Distribution Order"), approving the Trustee's Final Report and proposed distribution. Pursuant to said Order Mr. Smalis received a distribution from the estate in or around November of 2006.

Also on November 2, 2006, following the entry of the Distribution Order, a document was filed on the docket with the following description:

> Letter *regarding proof of claim for equitable division of martial* [sic] *property under 23 PA C.S.A. 3502 received by Stanley G. Makoroff Trustee from Ernest Smalis* Filed by Creditor Ernest Smalis (Makoroff, Stanley) (Entered: 11/02/2006).

*See* Doc. No. 103. As indicated by the description, the filing contained both a letter from Mr. Smalis and a proof of claim completed on his own behalf. Therein, Mr. Smalis asserted the following as the basis for an alleged *secured* claim: (1) goods sold, (2) money loaned, (3) equitable division of marital property pursuant to 23 Pa.C.S.A. §3502. The letter indicated that the documentation to verify his claim was in the possession of the United States Department of Justice and Internal Revenue Service. Subsequently, on November 3, 2006, a *nearly identical*

---

[7] The Court notes that the Houtzdale Address is that provided to the Court by Mr. Smalis in his original letter to the Court requesting notices in this case. The Court is unaware of any indication of a change of address for Mr. Smalis until November 2, 2006, when Mr. Smalis provided a different address on a proof of claim.

5

proof of claim submitted by Mr. Smalis was entered on the Claims Register.[8] No further action was taken with respect to the claim asserted by Mr. Smalis long after the bar date, after the Trustee's Final Report, and after the Order approving the same.

Significantly, no appeal, belated objection, or request for reconsideration was filed with respect to the Distribution Order. Distributions were made pursuant thereto, including to Mr. Smalis. A final decree was signed on March 28, 2007, discharging Trustee Makoroff, cancelling the bond, and closing the case. The bankruptcy case remained closed until 2008, when the Debtor, through Attorney Lampl as her counsel, sought to reopen the case as the result of a civil action filed against the Debtor by the Commonwealth of Pennsylvania, Department of Environmental Protection (the "Department"). Although Debtor withdrew her motion, the case was ultimately reopened upon a latter motion of the Department by Order entered October 30, 2008. A trustee was not appointed in the reopened case at that time.

On January 3, 2012, the case was reassigned to the Undersigned. The case was inactive from its reopening until April 2, 2012, when Mr. Smalis filed a pro se *Complaint to Determine Dischargeability* ("Dischargeability Complaint") commencing Adversary Proceeding 12-2140. Shortly thereafter, Trustee Sikirica was appointed as trustee in the bankruptcy case.

Ultimately, the Dischargeability Complaint was resolved by the parties' settlement agreement, containing broad releases. *See* Settlement Agreement and Release ("Settlement"),

---

[8] Notably, the proofs of claim filed by Mr. Smalis were submitted without sufficient facts to support the claim(s) alleged and appear to lack prima facie validity. The parties, however, have not addressed this issue nor does the Court need to make any determination with respect thereto.

Significantly, in both documents (which are dated the same) Mr. Smalis identified his claim as a *secured* claim, and he did not check the box indicating that he possessed an *unsecured nonpriority* claim. However, in the proof of claim on the Claims Register, Mr. Smalis checked the box identifying his claim as an *unsecured priority* claim as well. Notably, he did not choose any of the options provided to specify the alleged priority of his claim nor did he identify a statutory basis for the selection.

In addition, the Court notes that both proofs of claim inexplicably provide for a claim incurred from 2001 to *2006*, rendering the claim, in part, post-petition. No distribution of estate funds would be made with respect to the post-petition claim.

6

Adversary Proceeding 13-2362, Exhibit C to Doc. No. 27. The stipulation filed in Adversary Proceeding 12-2140, advised the Court that the parties reached a settlement of the underlying dispute, which did not involve property of the estate, resulting in an agreement to dismiss the proceeding with prejudice. *See* Stipulation, Adversary Proceeding 12-2140, at Doc. No. 32. Attached thereto was a handwritten consent to dismissal signed by Mr. Smalis. Accordingly, the adversary proceeding was closed on November 19, 2012.

While matters were proceeding in the reopened bankruptcy case, Mr. Smalis commenced another adversary proceeding by filing a Complaint alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Complaint") against the Debtor and others. *See* Adversary Proceeding 13-2362. Following the filing of several motions to dismiss by defendants in that proceeding, the RICO Complaint was dismissed with prejudice and the Court found as follows:

> With respect to the Debtor, who is a named Defendant, Plaintiff previously filed a complaint challenging the dischargeability of debt and objecting to Debtor's discharge (Adv. No. 12-2140). Upon stipulation of the parties to that proceeding, based upon a settlement agreement, the adversary proceeding was dismissed with prejudice. Now, despite the foregoing, Plaintiff restates in this proceeding his alleged bases for nondischargeability of debt and objection to discharge and further seeks to recharacterize his claims against Debtor as RICO claims. However, based upon the record of the case and related proceedings and the settlement agreement entered into by the parties, Plaintiff cannot pursue his alleged RICO claims against Debtor who received a discharge and with whom he settled his prior adversary proceeding objecting to her discharge. The stipulation was approved by Order of this Court, which was not appealed and of which reconsideration was not sought.

*See* Order dated January 17, 2014, Adversary Proceeding 13-2362, Doc. No. 71. The Order dated January 17, 2014, was not appealed.

On April 7, 2014, nearly **nine years** after the commencement of the bankruptcy case and **eight years** after the Debtor was granted a discharge, another adversary proceeding was filed.

7

*See* Adversary Proceeding 14-2075. The new proceeding was commenced by the filing of the *Complaint of E. Smalis Painting Co., Inc. for an Order Determining its Debt is not Discharged and an Order Allowing its Claim as a Timely Filed Late Proof of Claim*. Therein, Painting Company asserted that it is a creditor of Debtor; Debtor failed to schedule Painting Company's claim or list Painting Company on the mailing matrix; and Painting Company did not receive notice of the case, claims bar date, or notice of the deadline to object to discharge as a result of the foregoing. Further, Painting Company asserted that it did file a late proof of claim, citing to the proof of claim filed by Mr. Smalis on November 3, 2006. Painting Company, however, was far too late to file a claim and object to dischargeability of its alleged debt as Painting Company, through Mr. Smalis, had knowledge of the bankruptcy case in sufficient time to act. This lack of vigilance despite knowledge of the case foreclosed relief. Accordingly, by Memorandum Opinion and Order dated June 12, 2015, the relief requested in Painting Company's complaint was denied.

While Painting Company's adversary proceeding was pending, Mr. Smalis filed the Motion for Leave presently before the Court. Mr. Smalis has been extensively involved in this bankruptcy case, previously commencing actions naming numerous entities and individuals; now, Mr. Smalis seeks relief against the Trustees, raising many of the same allegations he has previously raised in this Court. With this background in mind, the Court will address the Motion for Leave, responses thereto, request for dismissal, and related filings.

Analysis

Although the Motion for Leave contains a multitude of allegations against various individuals, the relief requested therein is leave to commence a civil action against the Trustees

8

and surety.[9] The Motion for Leave, citing to *In re VistaCare Group, LLC*, 678 F.3d 218 (3d Cir. 2012), requests said relief pursuant to the Barton doctrine set forth in *Barton v. Barbour*, 104 U.S. 126 (1881). *See* Motion for Leave, at 1. In *VistaCare*, the Third Circuit held that, under the Barton doctrine, prior to commencing an action *in another forum* against a trustee for acts done in the trustee's official capacity, a party must first obtain leave of the bankruptcy court. *See* 678 F.3d at 224. The policy reasons in support of the doctrine were set forth as follows:

> Because a judgment against the trustee, whether ultimately satisfied out of the assets of the estate or out of the trustee's pockets, may affect the administration of the estate, "[t]he requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate" be either brought in the bankruptcy court or with the permission of the bankruptcy court. "If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, [the state] court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa."

*See id.* at 228 (citations omitted). The Court notes, however, that Mr. Smalis seeks leave to commence the civil action *in the Bankruptcy Court for the Western District of Pennsylvania* as opposed to a different forum. *See* Motion for Leave, at 22-23. As Mr. Smalis is representing himself and to the extent he may seek to adjudicate such matters in another forum, this Court will proceed to address the Motion for Leave.

As a preliminary matter, the Court notes that Mr. Smalis brings the instant Motion for Leave asserting that he is a creditor and party-in-interest in the bankruptcy case. *See* Motion for Leave, at 1. Despite identifying himself as a creditor of Debtor, pursuant to the Settlement entered into by Debtor and Mr. Smalis, the parties resolved all claims between them. The

---

[9] Within the Motion for Leave, Mr. Smalis sets forth a multitude of allegations spanning from before the commencement of this case in 2005 to present. This Court has previously addressed many of these allegations, most of which do not appear to have any bearing on Mr. Smalis' allegations with respect to the conduct of the Chapter 7 Trustees. For purposes of clarification and thoroughness, the Court will address some of these matters as well.

Settlement resulted in the dismissal of Adversary Proceeding 12-2140, with prejudice, and the dismissal of Adversary Proceeding 13-2362, with prejudice. Thus, as an individual who failed to file a claim prior to the bar date and entry of the Distribution Order, did not appeal or object to said Order being entered, and subsequently settled his alleged claims with the Debtor, Mr. Smalis' standing to bring an action against the Trustees appears questionable at best. Apparently mindful of this potential roadblock to his request for relief, Mr. Smalis seeks to invalidate the Settlement now, over two years later.

Within his *response* to the Debtor's Motion to Dismiss, Mr. Smalis included what he identified as two motions: a motion to deem the Settlement defective and a motion to bar the debtor from proceeding based upon judicial estoppel.[10] As the Court noted at the June 9th Hearing, "[a]ny affirmative request for relief shall be brought by motion and may not be included in any response to a motion." W.PA.LBR 9013-1(c). The Court is treating the filing as a response. However, notwithstanding the improper inclusion of "motions" within the response, the requests for relief are nonetheless deficient.[11]

With respect to Mr. Smalis' request to apply judicial estoppel, it is unclear what inconsistent positions Debtor has allegedly taken or what impact this has on the Motion for Leave. As to Mr. Smalis' attempt to invalidate the Settlement, this Court finds no merit. Although the Dischargeability Complaint commencing Adversary Proceeding 12-2140 does

---

[10] Similarly, Mr. Smalis included a motion to deem the Settlement to be defective within his *rebuttal answers* to Trustee Sikirica. Mr. Smalis also dedicated a portion of his Motion for Leave to the argument that the Settlement is defective. *See* Motion for Leave, at 19-20. To the extent Mr. Smalis makes allegations against Attorney Lampl relating to the Settlement, none of those allegations appear to be relevant to determining whether his claims against the Trustees have merit.

[11] The Court notes that Mr. Smalis has since filed motion(s) requesting the relief set forth in his response. *See* Doc. No. 223 and Adversary Proceeding 12-2140, Doc. No. 40. By Order entered June 15, 2015, the new motion(s) have been held in abeyance pending the Court's resolution of the Motion for Leave.

include an objection to discharge pursuant to 11 U.S.C. §727(a)(4), as pointed out by the motion to dismiss filed in that proceeding, the objection was untimely and could not proceed pursuant to Fed.R.Bankr.P. 4004. By the time the objection to discharge was raised in 2012, the discharge had been entered for approximately **six years** by order entered March 6, 2006. Notice of the Discharge Order was provided to Mr. Smalis at the address he supplied to the Court. *See* Doc. No. 61. Further, the Trustee had long before made distribution resulting in payment to creditors and even a surplus to Debtor, and the Settlement of Mr. Smalis' alleged personal claims against Debtor did not impact creditors or the bankruptcy estate. *See* Stipulation, Adversary Proceeding 12-2140, at 32. It is clear that Mr. Smalis attempts to invalidate the Settlement to simply reinstate his own alleged claims as he is now dissatisfied with the Settlement he entered into years ago.[12] Regardless of the validity of the Settlement and Mr. Smalis' potential lack of standing, this Court will evaluate the Motion for Leave.[13]

Within the Motion for Leave, Mr. Smalis makes wide-ranging allegations against the Debtor and various entities and individuals. It is unclear how these allegations relate to the alleged misconduct of the Trustees and the request to commence litigation against the Trustees pursuant to the Barton doctrine. Under the Barton doctrine, "[a] party seeking leave of court to

---

[12] The Court notes that it is not uncommon for Mr. Smalis to act without regard to prior resolutions achieved by settlement or consent. In 2005, Mr. Smalis commenced Adversary Proceeding 05-3325, which was resolved by a Consent Order of Court. Subsequently, in a motion for sanctions filed in Adversary Proceeding 13-2362, Mr. Smalis challenged the Consent Order, asserting that he did not authorize settlement. This Court denied Mr. Smalis' motion for sanctions and a later motion for reconsideration, and Mr. Smalis appealed those Orders. *See* Adversary Proceeding 13-2362, Doc. Nos. 89, 103, 105. On appeal, the District Court affirmed this Court's Orders. *See* Adversary Proceeding 13-2362, Doc. Nos. 147 and 148. Nonetheless, Mr. Smalis continues, to date, to raise these same allegations made in Adversary Proceeding 05-3325. It is evident that this is Mr. Smalis' *modus operandi* in this case.

[13] In these proceedings, Mr. Smalis references the alleged nondischargeability of his debt and makes arguments regarding late filed claims pursuant to *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). Although in deciding the instant Motion for Leave it is unnecessary to resolve these arguments, the Court notes that it addressed the applicable standards in its Memorandum Opinion dated June 12, 2015, in Adversary Proceeding 14-2075.

11

sue a trustee 'must make a prima facie case against the trustee, showing that its claim is not without foundation.'" *See VistaCare*, 678 F.3d at 232 (quoting *In re Nat'l Molding Co.*, 230 F.2d 69, 71 (3d Cir. 1956)). In sifting through the allegations contained within the Motion for Leave, the Court focuses on those made against the Trustees. To the extent that the Barton doctrine is applicable, this Court must assess whether these claims have a foundation. This Court is uniquely suited to assess whether the claims against the Trustees have merit due to this Court's familiarity with the record, underlying facts, and parties. *See VistaCare*, 678 F.3d at 233. Upon review, the Court finds Mr. Smalis' claims to be utterly frivolous.

With respect to alleged errors in foreclosure proceedings held in state court, Mr. Smalis requests that this Court address his contention that he was denied due process and that the Rooker-Feldman doctrine is inapplicable. *See* Motion for Leave, at 10-12. Mr. Smalis cites to arguments made within Adversary Proceeding 05-3325, a proceeding which has been closed since May 19, 2006. Further, Mr. Smalis complains of the conduct of entities that are not named as respondents to this Motion for Leave. This request has no clear bearing on the instant motion alleging misconduct of the Trustees despite Mr. Smalis' assertion that Trustee Makoroff wrongfully paid a claim that Mr. Smalis contends was previously paid in full. The Adversary Proceeding referred to by Mr. Smalis was resolved by Consent Order of Court dated May 19, 2006.[14] Therein, the Trustee was directed to make payment. The Consent Order was not

---

[14] The Court notes that Adversary Proceeding 05-3325 was settled and discontinued with prejudice by the Consent Order. The Consent Order was signed by Attorney Lampl for Mr. Smalis. In the Motion for Leave, Mr. Smalis asserts that Attorney Lampl was without authorization to sign on his behalf. Mr. Smalis previously raised this argument, which was addressed by this Court in its *Memorandum Order* dated March 3, 2014, denying Mr. Smalis' Motion for Sanctions, and *Memorandum Order* dated April 10, 2014, denying Mr. Smalis' Motion for Reconsideration. *See* Adversary Proceeding 13-2362, Doc. Nos. 89 and 103. Mr. Smalis appealed both Orders. The District Court affirmed this Court's Memorandum Orders. *See* Adversary Proceeding 13-2362, Doc. Nos. 147 and 148. This Court will not entertain issues which have been fully resolved despite Mr. Smalis' proclivity to repetitively plead the same matters without regard to final orders.

appealed nor was reconsideration sought. This Court finds that this is yet another attempt by Mr. Smalis to raise matters that have been resolved. To the extent Mr. Smalis contends that Trustee Sikirica should now pursue Adversary Proceeding 05-3325 due to the alleged violations of due process in the state court proceedings, Trustee Sikirica is not Mr. Smalis' counsel.[15] These claims against the Trustees are without foundation.

Mr. Smalis also alleges that the Trustees failed in a number of duties pursuant to 11 U.S.C. §704; however, Mr. Smalis fails to identify what provisions of the statute are applicable. Further, the Court notes that pursuant to §704(a)(1), trustees are directed to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" Based upon the record in this case, Trustee Makoroff did an exemplary job in complying with this duty. Adversary proceedings were commenced early on in the case to sell co-owned real estate and ultimately distribution was made to creditors resulting in a surplus to the Debtor.

Despite the foregoing, Mr. Smalis contends, without citing to authority, that Trustee Makoroff should have filed a claim on his behalf. First, it is not clear how Trustee Makoroff would have been aware of any potential claim by Mr. Smalis.[16] As Trustee Makoroff has asserted, there is no indication that, prior to filing a late proof of claim, Mr. Smalis ever

---

[15] With respect to Adversary Proceeding 05-3325, Mr. Smalis asserts in his rebuttal answers that he "is asking this Court to determine whether the defendants' actions and provisions violated his federal constitution rights." *See* Doc. No. 221 at 5. It appears that Mr. Smalis, who is not a debtor, seeks to have this Court adjudicate alleged violations of his rights by other non-debtors. Mr. Smalis fails to provide any jurisdictional basis for this *bankruptcy* court to adjudicate any such claims.

[16] Mr. Smalis contends that Trustee Makoroff should have had knowledge of him by virtue of a lawsuit between another entity and Painting Company due to Trustee Makoroff's firm's involvement in said proceeding. *See* Motion for Leave, at 4. First, it is not clear that Trustee Makoroff, individually, had any involvement in that litigation. Second, the Court notes that it is unclear how separate litigation in another forum, in which the Debtor was not a party, relates to this bankruptcy case or translates in some way to the Trustee's knowledge of Mr. Smalis' alleged claim or the alleged bad faith filing by the Debtor.

attempted to inform Trustee Makoroff of his alleged claim against the Debtor. Mr. Smalis failed to contradict Trustee Makoroff's assertion which is supported by the record. Second, to the extent Mr. Smalis asserts that the Trustee had a duty to file a claim on his behalf (assuming the Trustee was aware of a claim, which this Court does not find), 11 U.S.C. §501(c) provides, "[i]f a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee *may* file a proof of such claim." (Emphasis added.) The language of §501(c) does not impose a duty on a trustee. This allegation against Trustee Makoroff is wholly without merit.

Mr. Smalis also contends that Trustee Makoroff failed to provide him with proper notice to file a claim and subsequently failed to acknowledge his proof of claim. First, Mr. Smalis was not identified by Debtor as a creditor such that he would have received notice to file a claim to participate in distribution. Second, Mr. Smalis' proof of claim was filed long after the deadline passed and after the Distribution Order was entered.[17] Nonetheless, Mr. Smalis did *not* check the box on the proof of claim form indicating that he never received any notices from the bankruptcy court in this case. Even assuming *arguendo* that Mr. Smalis filed a tardy claim seeking distribution pursuant to either 11 U.S.C. §726(a)(2)(C) or (3), distribution would only be made on an *unsecured* claim pursuant thereto. Mr. Smalis, however, identified his claim as secured by checking the box indicating that the claim is secured by collateral. Further, Mr. Smalis provided a description of the collateral as real estate and equipment, significantly, without indication that

---

[17] As previously noted, to the extent Mr. Smalis possessed a claim against Debtor, he subsequently entered into a Settlement with Debtor. Furthermore, the Court notes that, assuming Mr. Smalis was able to establish entitlement to a distribution in this case, whether he would have actually received funds is questionable. Although this Court makes no finding in this regard, Trustee Makoroff advised that, due to significant liens of record against Mr. Smalis, any proceeds received by Mr. Smalis would have been attached by the Internal Revenue Service and the United States Government. *See* Doc. No. 232. Mr. Smalis disputes this contention. *See* Doc. No. 235.

any part of the claim was an *unsecured nonpriority* claim.[18] Although Mr. Smalis also identified the claim (in the version of the proof of claim filed on the Claims Register) as an *unsecured priority* claim by checking a box on the applicable form, he failed to identify the statutory authority for asserting a priority. Mr. Smalis did not identify a claim entitled to priority; he simply wrote "goods sold." There is no indication of entitlement to priority, and this Court finds none. Further, there has been no assertion by Mr. Smalis of a sale of collateral upon which he asserted a lien such that he would have received a distribution related thereto. Accordingly, Mr. Smalis' proof of claim identified only an alleged secured claim, which would not have been entitled to distribution.[19] No action was taken to challenge the Distribution Order prior to the Trustee's commencement of distribution pursuant thereto. The Court finds no foundation for challenging the Trustee's conduct in this regard.

In addition, Mr. Smalis alleges that Trustee Makoroff sold contaminated real estate, without disclosure of the contamination, that should have been abandoned pursuant to 11 U.S.C. §554(a). As to the allegations of nondisclosure, Trustee Makoroff asserted that he made every potential bidder aware of the contamination. There is no basis to conclude to the contrary as Mr. Smalis has done nothing more than make bare allegations regarding the alleged nondisclosure of contamination; nor could Mr. Smalis provide any foundation for such allegations as there is no

---

[18]    The form provides a space to fill in the amount of any *unsecured nonpriority* claim and describes such a claim as arising in three circumstances: "a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority."

[19]    Notably, in Mr. Smalis' rebuttal answers to Trustee Makoroff, he contends that ". . . the claim asserted claims of E. Smalis Painting Co., Inc[.] with the amounts to equipment, money loaned and total amount due to creditor E. Smalis Painting Co., Inc[.] and Ernest Smalis is over $500[,]000. Ernest Smalis filed the claim as an agent of the corporation." *See* Doc. No. 221, at 2. With respect to the Painting Company, these matters have been fully addressed in the Memorandum Opinion and Order entered June 12, 2015, in Adversary Proceeding 14-2075. Mr. Smalis has never clarified for the Court the distinction between the claim allegedly asserted on behalf of the Painting Company and that asserted on his own behalf.

reason Mr. Smalis would have been made a party to conversations between Trustee Makoroff and potential bidders. Furthermore, pursuant to §554(a), abandonment is appropriate where said property is "burdensome to the estate or . . . of inconsequential value and benefit to the estate." This was certainly not the case as sales of property resulted in funds for distribution to creditors for the benefit of the estate. This Court finds no misconduct by Trustee Makoroff in this regard, and significantly, no injury to Mr. Smalis. Trustee Makoroff's efforts to sell property were, in fact, of great value to the bankruptcy estate in fulfillment of his duties as trustee. Any objections to the sale should have been raised in a timely manner, and this Court notes that Mr. Smalis participated telephonically at the sale hearing. This is nothing more than a belated attempt to challenge a sale which was approved by this Court in 2006. The claim against Trustee Makoroff is without foundation.

Also related to the sale of contaminated property, Mr. Smalis appears to contend that Trustee Makoroff failed to challenge tax assessments related thereto extending as far in the past as 2002. To the extent Mr. Smalis contends that he personally failed to receive notices of assessments from the relevant taxing bodies, that is not a determination for this Court and, more importantly, not a failure on the part of the Trustees in this case. It seems that it is Mr. Smalis' contention that Trustee Makoroff should have challenged tax assessments on the basis that certain property was worthless. However, as Trustee Makoroff sold such property for a significant value to the benefit of the estate, it can hardly be argued that the property was worthless. Trustee Makoroff thoroughly explained the matter on the record at the June 9th Hearing, and this Court finds that he acted appropriately. Accordingly, to the extent Mr. Smalis alleges that Trustee Sikirica also failed in this regard as he has not attempted to recoup said

16

funds, Mr. Smalis' allegations are without foundation. Despite Mr. Smalis' apparent understanding to the contrary, the Trustees are not appointed to act as his personal counsel.

Mr. Smalis also asserts that Trustee Sikirica failed to take action with respect to Debtor's alleged violation of this Court's Order directing that she not dispose of surplus funds distributed to her. Mr. Smalis references two orders of this Court, one dated October 30, 2008, and the other dated November 6, 2012. The October 30, 2008 Order was entered by Judge Markovitz on the Department's motion to reopen the bankruptcy case. The November 6, 2012 Order, entered by the Undersigned, provides as follows:

> . . . [U]pon consideration of the Motion for Status Conference filed by the Chapter 7 Trustee, Jeffrey J. Sikirica, it is hereby ORDERED and DECREED that a Status Conference regarding the Order of Court dated October 30, 2008 directing Debtor, Despina Smalis, not to dispose of any surplus funds distributed to her until further order of Court shall be held on December 4, 2012 . . . .

*See* Doc. No. 142. First, the status conference was scheduled due to Trustee Sikirica's diligent monitoring of this case. Second, neither the Order entered on October 30, 2008, nor the Order entered on November 6, 2012, was entered on the request of or for the benefit of Mr. Smalis. Accordingly, it is not apparent on what basis Mr. Smalis believes he is entitled to relief. The Court finds the claims against Trustee Sikirica in this regard to be without foundation.

In addition, Mr. Smalis generally alleges additional failures by the Trustees. He asserts that the Trustee(s) failed to ask the appropriate questions at the meeting of creditors, investigate Debtor's financial affairs, and detect Debtor's bad faith filings, untruthfulness, and prepetition misconduct. Mr. Smalis makes strong allegations without any foundation to support them. In fact, the alleged misconduct by Debtor has not been established, and Mr. Smalis previously settled and released all potential claims against Debtor. Contrary to the alleged failures, Trustee Makoroff actually liquidated more than sufficient assets to pay creditors pursuant to the

17

Distribution Order. Further, to the extent that Mr. Smalis asserts that the Trustees failed to object to Debtor's discharge, it has not been established that the Trustees possessed any information (assuming *arguendo* that such information exists) in time to object to Debtor's discharge. In fact, even Mr. Smalis only belatedly challenged the Debtor's discharge. To the extent Mr. Smalis provided any information to Trustee Sikirica in support of an objection to Debtor's discharge, he fails to recognize the deadlines to object to discharge passed long ago. Although Mr. Smalis asserts that Trustee Sikirica has not taken action to recover and/or recoup assets, Trustee Sikirica is under no duty to do so unless there are claims to be paid. Much of Mr. Smalis' criticism of the Trustees is for failure to take certain action for the benefit of Mr. Smalis, personally, without any apparent benefit to the estate. It appears that Mr. Smalis seeks to recover from the Trustees and the bond for the consequences of his own lack of vigilance and entry into settlements which he now regrets. The Court finds Mr. Smalis' allegations to be without foundation.

Although the Court finds the Motion for Leave to be entirely without merit, as a final matter, this Court noted on the record the limitation set by 11 U.S.C. §322(d): "A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged." Many of the allegations made by Mr. Smalis relate to the period of time when Trustee Makoroff was appointed as trustee. However, Trustee Makoroff was discharged on March 28, 2007. The Motion for Leave was filed approximately **eight years** later. Thus, to the extent Mr. Smalis seeks to commence a proceeding on Trustee Makoroff's bond, the time to do so passed.

Mr. Smalis' Motion for Leave contains serious, disparaging accusations regarding the conduct of the Trustees in this case. There is simply no foundation for these accusations. Based upon an overall review of the record in the bankruptcy case and related proceedings, the Trustees

18

have honestly and diligently carried out their duties under the Bankruptcy Code. The Motion for Leave is nothing more than yet another attempt by Mr. Smalis to undo settlements approved by this Court, challenge orders entered long ago, and raise arguments previously addressed.[20] Despite Mr. Smalis' insistence that he has been denied due process, the record of this case and related adversary proceedings clearly demonstrates to the contrary. Mr. Smalis has been granted a great deal of leeway as a pro se litigant to bring numerous matters before this Court; however, on at least two occasions, this Court warned Mr. Smalis that baseless filings may result in sanctions. *See* Memorandum Orders, Adversary Proceeding 13-2362, Doc. Nos. 89 and 103. Notwithstanding the foregoing, Mr. Smalis filed the instant Motion for Leave. This Court has repeatedly provided Mr. Smalis with a full and fair opportunity to present requests for relief to this Court; however, where a filing is presented for an improper purpose, such as to harass, or where a filing contains allegations lacking evidentiary support, sanctions will be considered. Should Mr. Smalis choose to file yet another baseless motion before this Court, the Court will immediately enter an order directing Mr. Smalis to show cause why Fed.R.Bankr.P. 9011 has not been violated and why sanctions should not be imposed.

## Conclusion

Therefore, based upon the foregoing, this Court finds the Motion for Leave is without foundation, and, pursuant to the Barton doctrine, Mr. Smalis cannot proceed against the Trustees in another forum to the extent he seeks to do so. For the same reasons, Mr. Smalis cannot proceed against the Trustees in this forum. Accordingly, the Motion for Leave is denied with

---

[20] In fact, many of Mr. Smalis' allegations are entirely unrelated to the conduct of the Trustees and the relief sought in the Motion for Leave. Mr. Smalis uses the Motion for Leave as a vehicle to raise every complaint he has voiced throughout this bankruptcy case regardless of final orders. This pattern of behavior has been observed by the District Court in its Memorandum Order dated February 13, 2015, affirming this Court's Orders denying Mr. Smalis' motion for sanctions and motion for reconsideration. *See* Adversary Proceeding 13-2362, Doc. No. 147, at 4, 6.

prejudice. The Motion to Dismiss is deemed moot. An appropriate Order will be entered consistent with this Memorandum Opinion.

Date: July 7, 2015                          __/s/ Carlota M. Böhm_____
                                                      Carlota M. Böhm
                                                      United States Bankruptcy Judge

**MAIL TO:**

Office of the United States Trustee

Jeffrey J. Sikirica, Esq.

Stanley G. Makoroff, Esq.

John P. Lacher, Esq., and Robert O. Lampl, Esq.

Ernest Smalis
6652 Northumberland Street
Pittsburgh, PA 15217